# EXHIBIT "A"

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I. CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

BROAD STREET GLOBAL MANAGEMENT LLC
Plaintiff

Case # ____________
Judge ____________

vs.
DEEPIKA REDDY
Defendant

---

**II. AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III. TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
- ☐ Business governance
- ☐ Business torts
- ☐ Environmental/Toxic tort
- ☐ Third party indemnification
- ☐ Construction defect
- ☐ Mass tort
- ☐ Negligent security
- ☐ Nursing home negligence
- ☐ Premises liability—commercial
- ☐ Premises liability—residential

☐ Products liability
☐ Real Property/Mortgage foreclosure
- ☐ Commercial foreclosure
- ☐ Homestead residential foreclosure
- ☐ Non-homestead residential foreclosure
- ☐ Other real property actions

☐ Professional malpractice
- ☐ Malpractice—business
- ☐ Malpractice—medical
- ☐ Malpractice—other professional

☒ Other
- ☐ Antitrust/Trade regulation
- ☐ Business transactions
- ☐ Constitutional challenge—statute or ordinance
- ☐ Constitutional challenge—proposed amendment
- ☐ Corporate trusts
- ☐ Discrimination—employment or other
- ☐ Insurance claims
- ☐ Intellectual property
- ☒ Libel/Slander
- ☐ Shareholder derivative action
- ☐ Securities litigation
- ☐ Trade secrets
- ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [ ]
(Specify)

1

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Lorne E. Berkeley — Attorney or party

Fla. Bar # 146099 — (Bar # if attorney)

Lorne E. Berkeley — (type or print name)

08/26/2026 — Date

Filing # 255726911 E-Filed 08/26/2026 12:15:51 PM
NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**

**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

BROAD STREET GLOBAL MANAGEMENT LLC,

Plaintiff,

v.

DEEPIKA REDDY,

Defendant.
_____________________________________/

CASE NO.:

**COMPLAINT**

Plaintiff, Broad Street Global Management LLC ("Broadstreet" or "BSGM"), by and through undersigned counsel, sues Defendant, Deepika Reddy ("Reddy" or "Defendant"), and alleges as follows:

**I. INTRODUCTION**

1. This is an action for defamation per se arising from Defendant's mass publication of false and defamatory statements to hundreds of investors, business contacts, and third parties accusing Broadstreet of fraud, operating a scam, misappropriating investor funds, unlawfully converting investor money, concealing information, and engaging in unlawful conduct. One of the primary motivations of the Defendant was to publish outlandish and completely false statements in an attempt to have Plaintiff pay the Defendant in order to silence her from making statements, In short, Defendant was attempting to use false statements and the goal was to cause so much chaos to the Plaintiff that it would then pay to silence the false statements. Instead the Plaintiff is now suing the Defendant, will recover substantial damages against the Defendant and will expose

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

the Defendant for her true motives. While Defendant tries to paint herself as an investor that has lost money, she has in fact lost no money (she is profitable in the position which she falsely indicates she is a victim that has lost money), is a multi-millionaire living in a nearly twelve thousand square foot house, with a rather troubling history of litigation, mysterious grounds upon which she has had to stop practicing her dental profession and a history of similar conduct used against other businesses. With all of the calamity she has caused, not only will she not get any money from Plaintiff but now she will finally be brought to justice with severe and substantial monetary damages and future pursuit of punitive damages planned against her to remove all of her substantial financial worth for her outlandish and outrageous conduct. Furthermore, Defendant previously practiced as a dentist/endodontist and was the subject of patient claims and professional disciplinary issues that ultimately resulted in suspension from the practice of dentistry/endodontics. Defendant is now believed to be working as a realtor in Texas and resides in a home valued at approximately $6 million and has merely created her false and chaotic ai induced rampage to try to force a settlement to herself. Her concern is nothing more than getting money for herself and she has a prior questionable history of similar conduct. See attached Exhibit "A".

2. Upon information and belief, Defendant's claimed outrage is further undermined by the economics of the very stock position about which she complains. Defendant's approximate cost basis in the ZSQR shares is believed to be approximately $1.00 per share, while the shares have recently traded at or near approximately $4.00 per share. Although the shares are down from their all time high, Defendant desperately seeks to create calamity. Thus, despite Defendant's public accusations that she has been defrauded, financially harmed, or left with worthless stock, her own position appears to reflect a substantial paper gain over her approximate cost basis. This

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY - PUBLIC ACCESS

further demonstrates that Defendant's statements were not merely inaccurate, but were calculated to inflame and mislead other investors by creating the false impression that Defendant had suffered catastrophic losses when, in fact, the objective economics of her own investment position do not support that narrative.

3. Defendant did not merely express dissatisfaction with an investment, ask questions, communicate with regulators, or seek counsel. Rather, Defendant published provably false factual assertions, including the express statements that "Broadstreet pulled off a $600M scam!!"; "It was all a scam"; that investor money did not go into "ZSQR, or Coeptis, or anything real"; that Broadstreet used investor money to fund other land deals; and that investors were "defrauded a second time."

4. After the initial defamatory publications, Defendant continued and expanded the publication campaign through additional emails and demand-letter transmissions, including statements that Broadstreet's representative was the "butcher who led us to the slaughterhouse," was "ruthlessly lying to our faces," was "stripping us of our hard earned money," and that Defendant would uncover "what you and Broadstreet did," "how it was done," "who knew what," and "where the money went."

5. Those accusations attack Broadstreet's honesty, integrity, and fitness to conduct business. They falsely impute fraud, criminality, misappropriation, securities-law misconduct, and unethical conduct in Broadstreet's trade and business, and therefore constitute defamation per se.

6. Plaintiff does not bring this action to interfere with any protected right to petition, to communicate with the Securities and Exchange Commission, to seek counsel, to participate in litigation, or to discuss public court filings in a fair and accurate manner. Plaintiff brings this action

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

because Defendant crossed the line from protected opinion, fair comment, or petitioning activity into repeated, broad, and false factual accusations of fraud, scam conduct, diversion of money, investor deception, and criminal wrongdoing.

## II. PARTIES

7. Plaintiff Broad Street Global Management LLC is a limited liability company organized under the laws of South Carolina with its principal place of business in South Carolina. BSGM is the manager of Broadstreet Global Fund LLC and is part of the Broadstreet business enterprise referenced throughout Defendant's publications. Although BSGM is a South Carolina entity, BSGM's principals and representatives who were the subject of, and directly affected by, Defendant's publications reside and/or conduct Broadstreet-related business in Florida. BSGM's investor, business, and reputational relationships also include Florida-based relationships, including relationships in Miami-Dade County. Defendant's defamatory publications were directed into Florida, including Miami-Dade County, were received and read in Florida, including Miami-Dade County, and caused injury to BSGM's reputation, goodwill, investor relationships, and business relationships in Florida and Miami-Dade County.

8. Defendant Deepika Reddy is an individual. Based on the email materials presently available, Defendant used the email addresses deepikareddydds@gmail.com and deepamhome68@gmail.com to publish the defamatory statements alleged herein. Defendant's residence and domicile are presently believed to be Texas. However, Defendant knowingly and intentionally directed the defamatory emails into Florida, including Miami-Dade County, by sending, copying, and/or causing the republication of defamatory statements to recipients located in Florida and Miami-Dade County and to recipients known by Defendant to be connected to BSGM's Florida-based principals, investors, representatives, and business relationships.

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY - PUBLIC ACCESS

Defendant therefore knew, or reasonably should have known, that her publications would be received, read, understood, and cause injury in Florida, including Miami-Dade County.

9. To the extent Defendant's correct legal name, spelling, residence, or domicile differs from the information presently available to Plaintiff, Plaintiff reserves the right to amend this Complaint once confirmed.

**III. JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional threshold of this Court, exclusive of interest, costs, and attorneys' fees, and because this action seeks damages and related relief for defamation per se.

11. This Court has personal jurisdiction over Defendant pursuant to section 48.193(1)(a)(2), Florida Statutes, because Defendant committed tortious acts within Florida by intentionally publishing and transmitting false and defamatory written/electronic communications into Florida, including Miami-Dade County. This action arises directly from those Florida-directed communications. Defendant purposefully directed her defamatory publications to Florida-based recipients, including recipients connected to BSGM's Florida-based principals, investors, representatives, and business relationships, and Defendant's conduct caused injury to BSGM's reputation, goodwill, investor relationships, and business relationships in Florida, including Miami-Dade County.

12. Venue is proper in Miami-Dade County pursuant to section 47.011, Florida Statutes, because this cause of action accrued, in whole or in substantial part, in Miami-Dade County. Defendant's defamatory communications were published to, received by, read by, and/or further discussed by persons located in Miami-Dade County, Florida, and BSGM suffered

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

reputational and business injury in Miami-Dade County as a result of those publications. A substantial part of the events giving rise to the claim occurred in Miami-Dade County because the tortious publications were directed into Miami-Dade County, were completed upon receipt and review by Miami-Dade County recipients, and disrupted BSGM's Florida and Miami-Dade County investor, business, and reputational relationships. To the extent Florida's single-publication rule applies, BSGM elects Miami-Dade County as a proper venue for the defamatory publications and republications alleged herein because those publications were directed to and received by Miami-Dade County recipients.

13. Plaintiff brings this action in good faith based on specific false statements of fact that are defamatory per se. This action is not filed without merit and is not filed primarily because Defendant exercised any protected right of free speech, petition, or peaceful assembly. Plaintiff seeks relief only for knowingly false or recklessly false factual accusations of fraud, scam conduct, diversion of investor funds, unauthorized conversion, and criminal wrongdoing. Accordingly, this action is not barred by Florida's Anti-SLAPP statute, section 768.295, Florida Statutes. Plaintiff pleads that this action has substantial merit, is supported by identified publications, and is not brought for any improper purpose.

## IV. FACTUAL ALLEGATIONS

14. Broadstreet is engaged in the private investment and fund-management business. Its reputation for honesty, integrity, compliance, transparency, and lawful handling of investor assets is critical to its business operations and relationships with investors, counterparties, lenders, regulators, service providers, and business partners.

15. On or about August 24, 2026, Defendant sent an email from deepikareddydds@gmail.com to Andy Dakoriya and copied an extensive list of third parties,

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

including numerous investors, business contacts, and others associated with Broadstreet, ZSQR, SOUL, and related transactions.

16. The August 24, 2026 email and the email chain republished earlier statements by Defendant dated August 23, 2026, August 22, 2026, August 13, 2026, and other dates. Defendant's statements were published to hundreds of recipients, including people whose relationships, investments, or business dealings were connected to Broadstreet. Upon information and belief, among the recipients of Defendant's defamatory publications were individuals located in Florida, including Miami-Dade County, who received, opened, reviewed, and/or further discussed Defendant's defamatory statements in Florida and Miami-Dade County. Defendant's publications therefore were not merely sent from Texas; they were intentionally directed into Florida and Miami-Dade County and published there, where they caused reputational and business harm to BSGM.

17. Defendant's email campaign was not limited to private requests for information. Defendant affirmatively urged recipients to organize, preserve documents, provide information to prospective counsel, and act collectively against Broadstreet, while using false factual accusations of fraud, scam conduct, diversion, and wrongdoing to incite and influence recipients.

18. In additional emails dated on or about August 14, 2026, Defendant continued the publication campaign by accusing Broadstreet and its principals of failing to disclose material terms, using investor-derived assets to finance litigation or defense costs, setting up a structure that allegedly made the present dispute "guaranteed," and placing investors in a position where they were forced to fight Broadstreet with their own money while Broadstreet allegedly used resources derived from investor capital. Defendant knowingly signed all documents authorizing all corporate

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY - PUBLIC ACCESS

actions but now paints herself as an unintelligent victim rather than the multi-millionaire that she is.

19. In an email dated on or about August 15, 2026, Defendant further accused Broadstreet of failing to disclose the Operating Agreement and arbitration provisions before she invested, stating that she was "never made aware of the existence of this agreement" and that she did not "knowingly and voluntarily agree to arbitrate anything at the time [her] investment decision was actually made." Yes, the Defendant signed every document and loudly advertisers her wealth when it suits her but claims a lack of understanding when it does not suit her.

20. In that same August 17, 2026 email, Defendant further stated that Mr. Morada was "not simply the messenger," but rather "the butcher who led us to the slaughterhouse, time and time again, smiling and reassuring us while ruthlessly lying to our faces—stripping us of our hard earned money." Defendant then connected those accusations directly to Broadstreet by stating that she would keep digging until she uncovered "the full truth about what you and Broadstreet did, how it was done, who knew what, where the money went, and what was represented to this group of investors along the way."

21. Defendant's statements were of and concerning Broadstreet. Defendant repeatedly identified "Broadstreet" by name; referred to Broadstreet-related entities, Broadstreet investors, Broadstreet managers, Broadstreet principals, BSG Series CM, ZSQR, SOUL, and investor funds; and described the alleged conduct as conduct by Broadstreet, its agents, representatives, principals, and affiliated entities.

22. Defendant's statements were false. Broadstreet did not "pull off a $600M scam"; Broadstreet did not engage in a scam; Broadstreet did not secretly divert investor money as alleged;

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Broadstreet did not convert investor money without authority; Broadstreet did not use crypto investor money to secretly fund land deals as alleged; Broadstreet did not defraud investors a second time; and Broadstreet did not engage in the criminal, fraudulent, or dishonest conduct alleged or implied by Defendant.

23. Defendant knew or should have known her statements were false, lacked a reasonable factual basis for publishing them, and/or acted with reckless disregard for their truth or falsity. Defendant's own emails repeatedly reveal that she was speculating, asking questions, relying on incomplete information, acknowledging that she was not an attorney or securities professional, and stating that allegations remained unproven—yet she nonetheless published categorical accusations of scam conduct, fraud, defrauding investors, and money diversion to a broad audience.

24. Defendant's statements were not privileged. Defendant did not merely file a pleading, communicate with a governmental entity, or fairly summarize allegations in a public record. She added her own independent accusations, characterizations, and declarations of guilt, then widely disseminated them to third parties outside any protected proceeding.

25. As a direct and proximate result of Defendant's publications, Broadstreet has suffered harm to its business reputation, investor relationships, goodwill, and ability to conduct its business, and has incurred or will incur damages, including reputational harm, disruption of investor relations, and other damages to be proven at trial. Such harm occurred in Florida, including Miami-Dade County, because Defendant's publications were sent to and received by Florida and Miami-Dade County recipients, were understood by those recipients to concern BSGM and its principals, and disrupted BSGM's Florida and Miami-Dade County investor, business, and reputational relationships.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

## V. DEFAMATORY STATEMENTS

26. The defamatory statements include, but are not limited to, the following statements published and/or republished by Defendant in the email chain and additional emails described above:

27. "Broadstreet pulled off a $600M scam!!"

28. "This is why I am not interested in simply waiting to see whether ZSQR reaches $16. - it will never reach. It was all a scam."

29. "I do not think our money went into ZSQR, or Coeptis, or anything real. I think it went into funding the land deals, the same ones now flowing into SOUL. We got paper.(actually, more like toilet paper) That's it."

30. "If Broadstreet used the crypto series to quietly fund the land side while the SEC was already investigating them, then ZSQR investors are not a footnote. We are collateral damage from the SEC's own case, defrauded a second time, while a court-appointed monitor was supposed to be watching exactly this."

31. "Broadstreet took an investment represented to me as an income-producing product paying 7% quarterly and converted it into restricted public-company stock without the withdrawal opportunity I had been told I had."

32. "Broadstreet placed my money into restricted public stock anyway, without giving me a meaningful opportunity to withdraw."

33. "We need SOUL stopped, or at minimum paused, until it is established, clearly and independently, whether crypto and altcoin money ended up funding it."

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

34. “Once SOUL goes public, it becomes legitimate. A completed, publicly traded stock, the same way ZSQR did. At that point we lose our ability to ask where our money really went, before we even get to ask the question.”

35. “The SEC has alleged fraud, commingling of investor funds, cross-liability among Fund series, and diversion of investor money. If the documentary record ultimately establishes that investors were deliberately deceived, that their funds were diverted or commingled, and that these transactions were carried out through fraud, then I hope federal prosecutors pursue every person responsible, every charge supported by the evidence, and every dollar that can be traced.”

36. “And if the evidence proves what I now believe happened, then all four of you deserve to rot in federal prison.”

37. “Akhil was not simply the messenger. He was the butcher who led us to the slaughterhouse, time and time again, smiling and reassuring us while ruthlessly lying to our faces, stripping us of our hard earned money.”

38. “From where I stand today, I believe he kept leading people forward while knowing, or at the very least having every reason to know, that there was a very real possibility we would never see our money returned in the manner we had been promised. That is not one mistake. That is a pattern repeated over and over again.”

39. “I promise you I will keep digging until I have uncovered the full truth about what you and Broadstreet did, how it was done, who knew what, where the money went, and what was represented to this group of investors along the way.”

40. “If even a fraction of the questions now being directed toward my emails had been directed toward Broadstreet’s valuations, promised returns, disclosures, accounting, and

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

transaction terms when our money was being solicited, perhaps we would not be in this position today."

41. "Management may have access to Company, Series, BSG, insurance, or other investor-derived assets to retain experienced law firms and defend their actions, while individual investors are generally expected to fund their own representation. Unless those responsible are required to bear the cost of defending their own conduct, they may continue to wield financial power that was created, at least in part, with our money."

42. "Broadstreet's principals have had years to prepare for a day like this. They knew it was coming. It was not a surprise to them, it was guaranteed the moment they set up the structure the way they did."

43. "None of that answers the actual question: what exactly did Broadstreet sell, what did Broadstreet receive in exchange, and by what authority did Broadstreet convert investor capital into restricted shares of a company it says it no longer controls?"

44. "Those are not conspiracy theories. They are basic questions any fiduciary handling hundreds of millions of dollars of investor money should be able to answer immediately."

45. "Broadstreet's own records classified [payments] as dividends or distributions, while separately reporting 'Capital returned: $0,' [and those payments are] now apparently being treated as money 'paid back' to me."

46. "Broadstreet's own May and June 2026 reports show that, on April 27, 2026, my entire investment was recorded as 'Redeemed via stock in ZSQR,' even though I received no consent request, no share-allocation schedule, no per-share valuation, no conversion documentation, and no alternative."

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

47. "A power of attorney authorizing a manager to execute documents, make filings, or carry out transactions on behalf of the Fund is not the same thing as an unlimited right to disregard the investment terms, eliminate withdrawal rights, or unilaterally decide that an investor who expressly rejected stocks must now own restricted public shares."

48. "Nothing about this looks like an arm's-length transaction."

49. "A structure like that creates a real risk of conflicted valuation, affiliate benefit, dilution, and investor exposure—exactly the type of thing a prudent manager should explain before converting investor money."

50. These statements, individually and collectively, convey to reasonable readers that Broadstreet committed fraud, operated a scam, misappropriated investor money, secretly diverted investor funds, wrongfully converted investor property, deceived investors, employed or used unregistered securities solicitors, concealed material information, and engaged in criminal or quasi-criminal misconduct.

51. The above statements are capable of being proven true or false. They are not mere rhetorical hyperbole or protected opinion. In context, Defendant represented that she had "found information," checked facts, reviewed filings, reviewed public records, and was warning investors based on an alleged factual record. Defendant's statements therefore reasonably conveyed factual accusations, not merely subjective dissatisfaction.

52. It is further relevant that Defendant is not an unsophisticated or financially vulnerable investor. Rather, Defendant is an accredited investor who knowingly and voluntarily executed the applicable investment documents, which Plaintiff contends expressly authorized the actions now being challenged by Defendant in her defamatory statements. Despite those written

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY - PUBLIC ACCESS

agreements, Defendant has disseminated statements accusing Plaintiff and its principals of fraud, misconduct, and other serious wrongdoing.

53. Defendant's background further underscores the knowing and intentional nature of her conduct. Upon information and belief, Defendant previously practiced as a dentist/endodontist and was the subject of patient claims and professional disciplinary issues that ultimately resulted in suspension from the practice of dentistry/endodontics. Defendant is now believed to be working as a realtor in Texas and resides in a home valued at approximately $6 million. See attached valuation report.

54. These facts are relevant because Defendant is not merely expressing confusion as an inexperienced investor. Rather, she is an accredited investor with substantial financial sophistication, resources, and experience, who signed the governing investment documents, had access to the relevant contractual terms, and nevertheless published and republished defamatory statements to numerous third parties. Plaintiff contends Defendant did so despite knowing, or having reason to know, that her accusations were contrary to the governing investment documents and the facts known to her.

## VI. COUNT I - DEFAMATION PER SE

55. Plaintiff realleges and incorporates paragraphs 1 through 54 as if fully set forth herein.

56. Defendant published false statements of fact about Plaintiff to third parties, including the statements set forth above and in the email materials.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

57. The statements were of and concerning Plaintiff because they expressly identified Broadstreet and described Broadstreet's business, transactions, managers, investors, representatives, and alleged handling of investor funds.

58. The statements were false when made. Plaintiff did not commit the fraud, scam, misappropriation, diversion, conversion, securities-law misconduct, or other wrongdoing alleged by Defendant.

59. Defendant acted at least negligently in publishing the false statements. To the extent a heightened standard applies, Defendant acted with actual malice because she knew the statements were false or acted with reckless disregard for their truth or falsity, including by publishing categorical accusations while acknowledging incomplete information, unresolved factual questions, and the unproven nature of allegations.

60. The statements are defamatory per se because they charge Plaintiff with fraud, scam conduct, misappropriation of investor funds, criminal or quasi-criminal misconduct, securities-related wrongdoing, lack of business integrity, and conduct incompatible with Plaintiff's lawful business, trade, and profession.

61. The statements tend to subject Plaintiff to hatred, distrust, ridicule, contempt, and disgrace, and tend to injure Plaintiff in its business and trade.

62. Because the statements constitute defamation per se, damages are presumed as a matter of law. Plaintiff has also suffered actual damages, including injury to reputation, investor goodwill, business relationships, and other damages to be proven at trial.

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY - PUBLIC ACCESS

63. Plaintiff is entitled to compensatory damages, presumed damages, special damages if proven, punitive damages to the extent permitted by law upon the requisite showing, costs, and such other relief as the Court deems just and proper.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Broad Street Global Management LLC respectfully requests that this Court enter judgment in its favor and against Defendant Deepika Reddy, and award the following relief:

- Compensatory damages in an amount to be determined by the jury;
- Presumed damages available for defamation per se;
- Special damages to the extent proven;
- Punitive damages to the extent permitted by law and upon the requisite evidentiary showing;
- Prejudgment and post-judgment interest as permitted by law;
- Costs of this action;
- A narrowly tailored post-judgment injunction and/or corrective relief, only after final adjudication of falsity, requiring removal, retraction, or correction of statements adjudicated false and defamatory, to the extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as a matter of right.

Dated: August 26, 2026

Respectfully Submitted,

**BERKELEY LAW P.A.**
Counsel for Plaintiff
10600 Griffin Road
Suite 104
Cooper City, Florida 33328
Telephone: (954) 719-3484

By: /s/ Lorne E. Berkeley, Esq.
LORNE E. BERKELEY, ESQ.
Florida Bar No. 146099
Lorne@BerkeleyLawFL.com
LegalAssistant@BerkeleyLawFL.com

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

8/26/26, 11:31 AM [redacted] | Zillow

Back to search Zillow Save Share More












See all 40 photos

Zestimate®

## $5,745,900

[redacted]

**8** beds **11** baths **12,412** sqft

Est. refi payment: **$38,154/mo** Refinance your loan

SingleFamily | Built in 2001 | 1.46 Acres Lot

$5,745,900 Zestimate® | $463/sqft | $25,933 Estimated rent

## Home value

| Zestimate® | Estimated sales range | Rent Zestimate® |
|---|---|---|
| **$5,745,900** | **$4.83M - $6.84M** | **$25,933/mo** |

## Help make your Zestimate® more accurate

https://www.zillow.com/homedetails[redacted]zpid/ 1/1

**EXHIBIT "A"**